IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| REBECCA DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:09cv860-WC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION

Plaintiff Rebecca Davis applied for disability insurance benefits under Title II of the

Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*  Her application was denied at the

initial administrative level.  Plaintiff then requested and received a hearing before an

Administrative Law Judge (ALJ).  Following the hearing, the ALJ issued a decision in which

he found Plaintiff not disabled from the alleged onset date of November 4, 2005, through the

date of the decision.  Tr. 15.  The Appeals Council rejected Plaintiff's request for review of

the ALJ's decision.  The ALJ's decision consequently became the final decision of the

Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131

(11th Cir. 1986).  The case is now before the Court for review under 42 U.S.C. § 405(g).

---

[1]    Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. #14); Def.'s Consent to Jurisdiction (Doc. #13).  Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next

---

[2]      A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or

---

[3]        *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4]        *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

4

## III.    ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-four years old at the time of the hearing before the ALJ.  Tr. 20. Plaintiff completed her high school education.  Tr. 20.  Plaintiff's past relevant work experience was as a machine operator or "tire builder."  Tr. 14, 28.  Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 4, 2005 (Step 1).  Tr. 11.  At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "degenerative joint disease of bilateral knees, and medial meniscus tear."  Tr. 11.  The ALJ then found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (Step 3) Tr. 12.  Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform light work . . . except that she can sit for up to 6 hours total in an 8-hour workday; and stand for up to 2 hours total in an 8-hour workday.  She cannot kneel, crouch, or crawl.  She cannot perform tasks requiring use of foot pedals.  She cannot climb ladders, ropes, or scaffolds.  She can climb stairs no more than occasionally.  She must avoid frequent exposure to temperature extreme, wetness and humidity.  Because of pain, she is limited to simple one and two step instructions that can be learned in 30 days or less.

Tr. 13.  The ALJ then found that Plaintiff is unable to perform her past relevant work.  (Step 4) Tr. 14.  Next, the ALJ found that, given Plaintiff's age, education, work experience, and RFC, and after consulting with a vocational expert, "there are jobs that exist in significant numbers in the national economy that Plaintiff can perform."  (Step 5) Tr. 14.  The ALJ

found that such occupations include: "information clerk," "charge account clerk," and "surveillance system monitor." Tr. 15, 30.  Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from November 4, 2005, through the date of this decision." Tr. 15.

IV.    **PLAINTIFF'S CLAIMS**

As best the Court can tell, Plaintiff alleges two errors requiring reversal of the ALJ's decision: (1) the ALJ failed to "properly evaluate [Plaintiff's] subjective complaints of severe pain . . . in accordance with the Eleventh Circuit pain standard;" and (2) the ALJ's RFC findings conflict with "the vocational expert[']s recommendation."  Pl.'s Brief (Doc. #10) at 3.  The Court will address each of Plaintiff's claims in turn.

V.    **DISCUSSION**

A.    **The ALJ's treatment of Plaintiff's subjective complaints of pain.**

Plaintiff claims the ALJ "erred in failing to properly evaluate [Plaintiff's] complaints of pain in accordance with the pain standard enunciated in the Eleventh Circuit.  Indeed the proper standard is not even referenced in the administrative decision, which, in and of itself, is a basis to remand this case." Pl.'s Brief (Doc. #10) at 5.  Plaintiff then goes on to recite the "pain standard" and remark that a claimant's "subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id.* at 6.  Defendant maintains that the ALJ complied with governing regulations and applicable

law in finding Plaintiff's subjective complaints of pain less than fully credible.  Def.'s Brief

(Doc. #11) at 7.

The Court of Appeals for the Eleventh Circuit has articulated its "pain standard,"

governing the evaluation of a claimant's subjective testimony about pain, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  The ALJ evaluates the

"claimant's subjective testimony of pain" only after the claimant satisfies the first and one

of the alternate portions of the second prong of the pain standard.  *Foote v. Chater*, 67 F.3d

1553, 1560 (11th Cir. 1995).  The Eleventh Circuit has also held that, "in certain situations,

pain alone can be disabling, even when its existence is unsupported by objective evidence."

*Id.* at 1561.  Importantly, it is only evidence of the underlying condition which could

reasonably be expected to cause pain, not evidence of actual pain or its severity, which must

be presented by the claimant to satisfy the "pain standard."  *Elam v. Railroad Retirement Bd.*,

921 F.2d 1210, 1215 (11th Cir. 1991); *see also Foster v. Heckler*, 780 F.2d 1125, 1129 (4th

Cir. 1986); *Hill v. Barnhart*, 440 F. Supp.2d 1269, 1272-73 (N.D. Al. 2006) (quoting *Elam*,

927 F.2d at 1215).  Where the ALJ proceeds to consider the claimant's subjective testimony

about pain, the ALJ's decision to reject or discredit such testimony is reviewed for substantial

7

evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). Finally, if the ALJ determines to discredit subjective pain testimony and such testimony is crucial to the claimant's assertion of disability, the ALJ "must articulate specific reasons for questioning the claimant's credibility." *Id.*

At the hearing before the ALJ, Plaintiff testified about pain in her knees that results from standing or walking long distances. Tr. 22, 26. Plaintiff testified that the pain radiates from her knee through her hip and into her back and causes her to have to sit after periods of such exertion. Tr. 26. Plaintiff also testified about numbness she experiences in her hands and "bone spurs" in her heels. Tr. 25, 27. Plaintiff further testified that she was prescribed Celebrex and "Bioflex" for her pain, but that those drugs "don't really help," and that she has been taking over-the-counter pain medications while waiting to visit her doctor again. Tr. 22.

Plaintiff's claim that the ALJ's decision should be reversed because the ALJ failed to apply the "pain standard" is without merit. As will be shown below, the ALJ did indeed apply the relevant test in his decision. Plaintiff's claim that the "proper standard is not even referenced" in the ALJ's decision appears concerned merely with the fact that the ALJ did not utilize the words "pain standard" when evaluating Plaintiff's pain testimony. However, there is no requirement that the ALJ utilize any particular phraseology, so long as the appropriate standard is indeed applied. *Wilson*, 284 F.3d at 1225-26.

In this case, the ALJ properly stated the standards governing his evaluation of

8

Plaintiff's subjective pain testimony and cited to 20 C.F.R. § 404.1529, "which contains the same language regarding the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard." *Wilson*, 284 F.3d at 1225. Then, upon reviewing the record and Plaintiff's testimony, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment" given by the ALJ. Tr. 13. Thus, the ALJ found that Plaintiff passed through the threshold of the "pain standard," but that her testimony about her pain was not fully credible. Accordingly, the ALJ was required to "articulate specific reasons for questioning the claimant's credibility" and those reasons must be supported by substantial evidence.

The ALJ's given reason for his decision to discredit Plaintiff's subjective pain testimony was his finding of a lack of "convincing evidence . . . that the claimant experiences any significant limitation of ability to sit, stand/walk for brief intervals, lift/carry light objects, or use her hands for tasks requiring bilateral and manual dexterity," or that Plaintiff's "pain is so severe as to significantly impede [her] ability to perform the basic mental requirements of unskilled work on a regular and sustained basis." Tr. 13. In support of this conclusion, the ALJ noted that Plaintiff "does not require an assistive device for ambulation," "is able to perform activities such as personal care, limited cooking, shopping and driving,"

and "has not required long-term narcotic pain medication." Tr. 13-14.  The ALJ also found

that the record does not contain any medical opinion evidence suggesting functional

limitations greater than those set forth in the RFC.  Tr. 14.

Substantial evidence supports the ALJ's credibility determination.  There is no

evidence in the record - objective or opinion - which supports the claim that Plaintiff's pain

is disabling.[5]  The ALJ correctly relied, in part, on Plaintiff's own testimony that she treats

her pain with simple over-the-counter medications.  Moreover, the ALJ rightly relied upon

Plaintiff's own representations about her ability to attend to her personal care and perform

other day-to-day tasks which suggest that she is capable of performing work at the RFC level

indicated by the ALJ.  After reviewing the record, and given Plaintiff's present failure to cite

to any evidence in the record which corroborates her claim of disabling pain, the Court finds

that the ALJ correctly held that Plaintiff's subjective complaints about her pain "were not

entirely credible when compared with the objective medical evidence in the record." *George

v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009).  Accordingly, the Court holds that

substantial evidence supports the ALJ's finding that Plaintiff's subjective allegations about

---

[5]        The ALJ imposed even more restrictions on Plaintiff's RFC that did the disability
examiner who completed the Physical Residual Functional Capacity Assessment (Tr. 164-171).
In doing so, the ALJ credited the opinion of Plaintiff's own treating physician, *see* Tr. 133 - 134,
who, while basically agreeing with a separate functional capacity examiner's finding that
Plaintiff can perform "work at the LIGHT-MEDIUM Physical Demand Level" (Tr. 157), also
opined that "I don't think it is realistic that she can go stand for several hours, not even eight
hours in a day."  Hence, the ALJ imposed a restricted RFC in which Plaintiff may stand for only
up to two hours in a eight-hour workday.  Tr. 13.  There simply is no evidence in the record
supporting a conclusion that Plaintiff's pain causes more restrictions than those incorporated by
the ALJ into Plaintiff's RFC.

her pain are less than wholly credible, and Plaintiff's claim to the contrary is without merit.

   **B.    The ALJ's RFC findings in light of the vocational expert's testimony.**

   Plaintiff recites a portion of the VE's testimony when answering a hypothetical posed

by the ALJ and claims that "[s]ince the testimony of the VE documents that there is no work

that the claimant can perform, this Court should grant the claimant benefits."  Pl.'s Brief

(Doc. #10) at 6-7.  Notably, Plaintiff does not challenge the content of any of the ALJ's

hypothetical questions.  Defendant justifiably highlights the extremely conclusory nature of

Plaintiff's claim and asserts that it should be denied.

   At the hearing, the ALJ first posed a lengthy hypothetical to the VE in which he asked

the VE to assume that a person with roughly the same RFC as that eventually ascribed to

Plaintiff, might, "because of the combination of her impairments, . . . be expected to miss

work at least two days a week on a sustained basis such that she would have an absentee rate

of approximately 40 percent on a sustained basis." Tr. 28.  According to the VE, the person

discussed in the ALJ's hypothetical would not be able to perform any work. Tr. 29.  The ALJ

next posed a hypothetical involving the same person, minus the absentee rate, but adding

"marked limitations" in certain mental capacities.  According to the ALJ, this hypothetical

person also would be unable to work.  Tr. 29.  Finally, the ALJ posed a third question

involving the same hypothetical person from the first question, but without the absentee rate.

According to the VE, this hypothetical person would be able to perform sedentary work in

occupations which exist in significant numbers in the national economy.  Tr. 30.  The ALJ

then engaged in the colloquy which Plaintiff quotes in her brief, about "the acceptable number of absences in a month that an employer would tolerate for unskilled sedentary work on a sustained basis." Tr. 30. The VE opined that "[m]ore than two would result in unemployment." Tr. 30. Notably, there was no finding by the ALJ that Plaintiff would be required to miss more than two days a month if she is employed in a sedentary, unskilled occupation. Likewise, the VE did not offer any testimony that Plaintiff would be so limited.

Given the hypothetical nature of the colloquy between the ALJ and the VE, the Court is perplexed by Plaintiff's conclusion that "the testimony of the VE documents that there is no work that the claimant can perform." Pl.'s Brief (Doc. #10) at 7. Even a cursory reading of the colloquy demonstrates that the ALJ posed a number of hypothetical questions to the VE to gauge the ability of hypothetical claimants to work despite certain limitations. The ALJ did not explicitly relate any particular hypothetical to Plaintiff. However, in the one hypothetical most resembling Plaintiff, where the hypothetical claimant has Plaintiff's RFC without the absentee rate, the VE clearly testified that such a person would be able to work. In short, by merely eliciting testimony from the VE that missing work more than twice a month results in unemployment, the ALJ did not somehow impute such absenteeism to Plaintiff. Plaintiff's claim to the contrary confuses the very nature and purpose of the practice of posing hypothetical questions to a VE. Plaintiff's claim that the ALJ "totally disregard[ed] the vocational expert's recommendation" is without merit.

## VI.    CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is supported by substantial evidence and is, therefore, AFFIRMED.  A separate judgment will issue.

DONE this 16th day of August, 2010.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

13